**Hearing Date:  Wednesday, January 21, 2015, at 10:00 a.m.**
**Objection Deadline:  Wednesday, January 14, 2015, at 4:00 p.m.**

**GRANT & EISENHOFER PA**
Jay W. Eisenhofer
Geoffrey C. Jarvis
485 Lexington Avenue
New York, New York 10017
(646) 722-8500

Attorneys for Refco Inc., and Refco Group Ltd., LLC.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>REFCO INC., *et al.*,<br><br>               Reorganized Debtors. | Chapter 11<br><br>Case No. 05-60006 (RDD)<br><br>Jointly Administered |
| REFCO GROUP LTD., LLC,<br><br>               Plaintiff,<br><br>        - *against* -<br><br>CANTOR INDEX HOLDINGS, L.P.,<br><br>             Defendant. | Adv. Proc. No. 10-03527 (RDD) |

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR AN ORDER OF CONTEMPT**
**AGAINST DEFENDANT CANTOR INDEX HOLDINGS, L.P.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND ........................................................................................................................ 1

DISCUSSION ............................................................................................................................ 7

I.    THE COURT HAS THE JURISDICTION AND AUTHORITY TO HOLD
      CANTOR INDEX IN CONTEMPT OF COURT ............................................................ 7

II.   CANTOR INDEX IS IN CONTEMPT OF THIS COURT'S ORDER AND
      JUDGMENT .......................................................................................................... 9

      A.    THE COURT'S MAY 19, 2011 ORDER AND JUDGMENT ARE CLEAR AND
            UNAMBIGUOUS ........................................................................................ 9

      B.    CANTOR INDEX'S NONCOMPLIANCE IS CLEAR ....................................... 12

      C.    CANTOR INDEX FAILED TO DILIGENTLY AND REASONABLY COMPLY WITH
            THE COURT'S ORDER AND JUDGMENT ................................................... 13

III.  COMPENSATORY AND COERCIVE SANCTIONS ARE NECESSARY AND
      APPROPRIATE .................................................................................................... 15

      A.    COMPENSATORY SANCTIONS SERVE CONTEMPT'S REMEDIAL PURPOSE ............... 15

      B.    COERCIVE SANCTIONS ARE NECESSARY TO ENSURE CANTOR INDEX'S
            COMPLIANCE ........................................................................................ 16

            1.    The Harm Of Cantor Index's Continued Disobedience Of The
                  Court's Order Is Substantial – And Only Increases With The
                  Passage Of Time ....................................................................... 17

            2.    RGL's Proposed Sanction Can Be Expected To Be Effective In
                  Forcing Compliance, And Is Not An Overwhelming Burden For
                  Cantor Index ............................................................................. 18

CONCLUSION ........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
    87 F. Supp. 2d 281 (S.D.N.Y. 2000)...................................................................16

*In re Bambi*,
    492 B.R. 183 (Bankr. S.D.N.Y. 2013) ...................................................................9

*Bambu Sales, Inc. v. Ozak Trading, Inc.*,
    58 F.3d 849 (2d Cir. 1995)..................................................................................10

*Cantor Index Holdings, L.P. v. Refco Group Ltd., LLC*,
    Case No. 11-CV-04827 (PGG) (S.D.N.Y.) .............................................2, 3, 4, 11

*CE Inter. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*,
    No. 12-cv-8087 (CM), 2013 WL 324061 (S.D.N.Y. Jan. 24, 2013) .......................17

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).................................................................................................8

*In re Chief Exec. Officers Clubs, Inc.*,
    359 B.R. 527 (Bankr. S.D.N.Y. 2007) ..................................................................14

*Cobell v. Babbitt*,
    37 F. Supp. 2d 6 (D.D.C. 1999) ................................................................... *passim*

*Combs v. Ryan's Coal Co., Inc.*,
    785 F.2d 970 (11th Cir. 1986) .............................................................................12

*Cordius Trust v. Krummerfeld Assocs.*,
    658 F. Supp. 2d 512 (S.D.N.Y. 2009).....................................................................8

*In re Gregg*,
    428 B.R. 345 (Bankr. D.S.C. 2009) ......................................................................18

*In re GGW Brands, LLC*, Adv. Proc. 2:13-ap-01552-SK, 2013 WL 6908889, at *14
    (Bankr. C.D. Cal. Nov. 15, 2013) .....................................................................7, 10

*Manhattan Indus. Inc. v. Sweater Bee by Banff, Ltd.*,
    885 F.2d 1 (2d Cir. 1985) ...................................................................................14

*In re MarketXT Holdings Corp.*,
    336 B.R. 39 (Bankr. S.D.N.Y. 2006)...............................................................12, 14

*Musalli Factory for Gold & Jewelry Co. v. N.Y. Financial LLC,*
    No. 06-CV-92, 2010 WL 2382415 (S.D.N.Y. June 14, 2010) ...............................................16

*Muze Inc. v. Digital on Demand, Inc.,*
    356 F.3d 492 (2d Cir. 2004)....................................................................................................10

*New York State Nat'l Org. for Women v. Terry,*
    886 F.2d 1339 (2d Cir. 1989)........................................................................................ *passim*

*Perfect Fit Indus., Inc. v. Acme Quilting, Inc.,*
    673 F.2d 53 (2d Cir. 1982)................................................................................................16, 18

*Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., et al.,*
    C.A. No. 1:13-cv-01654-RA-HBP (S.D.N.Y.) ......................................................................17

*In re Refco Inc., et al.,*
    Case No. 05-60006 (RDD) ..................................................................................................1, 2

*In re Res. Capital LLC,*
    Case No. 12-12020 (MG), 2014 WL 1645350 (Bankr. S.D.N.Y. Apr. 23, 2014)....................7

*S.E.C. v. Northshore Asset Mgmt., LLC,*
    No. 05-cv-2192, 2006 WL 1642915 (S.D.N.Y. June 14, 2006) .............................................15

*S.E.C. v. Pension Fund of Am., L.C.,*
    No. 05-20863, 2006 WL 1104768 (S.D. Fla. Mar. 23, 2006)................................................12

*In re Skinner,*
    917 F.2d 444 (10th Cir. 1990) ................................................................................................8

*Travels Indem. Co. v. Bailey,*
    557 U.S. 137 (2009).................................................................................................................7

*United Mine Workers v. Bagwell,*
    512 U.S. 821 (1994).............................................................................................................8, 16

*United States v. Petal,*
    464 F. App'x 342 (5th Cir. 2012) .........................................................................................10

*United States v. Revie,*
    834 F.2d 1198 (5th Cir. 1987) ...............................................................................................7

*Vuitton et Fils S.A. v. Carousel Handbags,*
    592 F.2d 126 (2d Cir. 1979)..................................................................................................14

STATUTES

Section 105(a) of Title 11 of the U.S. Code .........................................................................1, 8, 9

Pursuant to Rules 7070, 9020, and 9014 of the Federal Rules of Bankruptcy Procedure, Rule 70(e) of the Federal Rules of Civil Procedure, and Section 105(a) of Title 11 of the U.S. Code, Plaintiff Refco Group Ltd., LLC ("Plaintiff" or "RGL"), hereby moves the Court for an order holding Defendant Cantor Index Holdings, L.P. ("Defendant" or "Cantor Index"), in contempt of court for its failure to comply with this Court's May 19, 2011 order and judgment requiring Defendant to provide audited financial statements.

## BACKGROUND

This action arises out of a bankruptcy proceeding involving a Chapter 11 Petition for Bankruptcy filed by Refco Inc. *In re Refco Inc., et al.*, Case No. 05-60006 (RDD). The Court confirmed the bankruptcy plan ("Plan") on December 15, 2006.

In 2002, RGL, a subsidiary of Refco Inc., invested $8 million in Cantor Index in exchange for a 10% limited partnership interest. Pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 2004, RGL sought and received orders from this Court to obtain relevant information from Cantor Index necessary to value its 10% interest. However, Cantor Index consistently resisted RGL's efforts.

As a consequence of Cantor Index's obstruction, RGL initiated this adversary proceeding on August 30, 2010. RGL's Amended Complaint sought audited financial statements pursuant to Section 9.02 of the January 1, 2002 Amended and Restated Limited Partnership Agreement ("Partnership Agreement") between Cantor Index and RGL. Dkt. #14, Ex. A. Section 9.02 provides that:

> [Cantor Index] shall provide [RGL] a monthly report of business activity (including revenues), a quarterly unaudited profit and loss statement and as soon as practicable following the end of each year audited annual financial statements, and shall provide [RGL] with required tax reporting information with respect to [Cantor Index] and any other reports reasonably requested by [RGL].

*Id.* at 19.

RGL moved for summary judgment on its claim for the provision of the audited financial statements.  The Court held a hearing on April 22, 2011, and issued an order ("Order") on May 19, 2011, granting RGL summary judgment on its claim for specific performance.[1]  On the same day, the Court issued a judgment in Plaintiff's favor.  Dkt. #33, May 19, 2011 Judgment ("Judgment").  The Judgment directed in relevant part that,

> Cantor Index shall, at its own cost and expense, have audited annual financial statements (on a consolidated basis) for the years 2003 through 2010 prepared for it and provided to RGL as soon as practicable.  Cantor Index shall, at its own cost and expense, for 2011 and each future year, until the parties hereto agree otherwise in writing or pursuant to further order of this Court, have audited annual financial statements (on a consolidated basis) prepared for it and provided to RGL as soon as practicable following the end of each year.

*Id.*

Cantor Index filed a notice of appeal on May 27, 2011, which appeal is currently pending before the U.S. District Court for the Southern District of New York ("District Court").  *Cantor Index Holdings, L.P. v. Refco Group Ltd., LLC*, Case No. 11-CV-04827 (PGG) (S.D.N.Y.).  On May 27, 2011, Defendant moved for an order staying the Judgment, Dkt. #36, and this Court denied that motion on June 27, 2011.  Dkt. #48.

Over the last three years, RGL has repeatedly contacted Cantor Index to determine when—and indeed whether—Defendant intended to comply with the Court's Judgment.  Cantor Index's responses, however, have been vague, short on answers, and long on excuses and missed deadlines:

- On August 3, 2011, more than two months after the Court had issued its Judgment, Cantor Index had not provided any update regarding its compliance. RGL therefore wrote to Cantor Index, requesting that it "detail for us promptly the specific measures and progress—both those taken in the past two months and any

---

[1] The Order was signed on May 19, 2011, and entered on May 20, 2011.  Dkt. #32.

measures Cantor Index or its outside auditors plan to take in the near future—to comply with the Judgment." Ex. A.[2]

- On August 30, 2011—some three months after the Judgment—Cantor Index retained Ernst & Young LLP ("E&Y") to audit Cantor Index's statements from 2008 forward. On August 31, 2011, however, RGL was informed that E&Y would not perform the audits for the 2003-2007 financial statements. Ex. B. On September 8, 2011, in response, Refco asked for a written update "of the progress of any measures to engage an audit firm for the 2003 – 2007 years." Ex. C.

- On October 11, 2011, Cantor Index disclosed to RGL that Deloitte & Touche LLP ("Deloitte") had declined to perform audits for the 2003-2007 financial statements. On November 8, 2011, Cantor Index informed RGL that it was instead considering a three-person accounting firm from Southfield, Michigan, Zwick & Banyai, P.L.L.C. ("Z&B"), to perform what Cantor Index has since repeatedly described as a lengthy and complex task. Dkt. #55, at 2.

- Seven months after the Court ordered Cantor Index to provide audited financial statements, Cantor Index had still not produced a single document. Consequently, on December 6, 2011, RGL sought a status conference with the Court. Dkt. #54. In preparation for the conference, RGL informed the Court that "[b]eginning on August 3, 2011 and continuing until mid-November, the parties exchanged multiple [communications] related to the status and progress of the audits." Dkt. #55. RGL further noted that Cantor Index's previous estimates for the post-2008 audits had not been met, and that "[n]o audit work has even commenced for the years 2003-2007." *Id.* RGL observed that "[i]t is difficult to reconcile the above events with the Judgment's directive that the audits be completed 'as soon as practicable.'" *Id.* RGL requested that the Court establish a "schedule, including deadlines and remedies for missed deadlines." *Id.*

- On January 18, 2012, Cantor Index wrote its own letter to the Court in advance of the January 23, 2012 status conference. Dkt. #57. Cantor Index also informed the Court that E&Y and Deloitte had declined to perform the audit work for 2003-2007, but it was "confident" in Z&B's abilities. *Id.* at 2. It also requested that the Court decline to provide "a 'schedule, including deadlines and remedies for missed deadlines'" because to do so would amount to an "amendment of the Final Judgment." *Id.* at 3.

- At the January 23, 2012 status conference, the Court considered the parties' presentations regarding the progress of the audit production. The Court cautioned Cantor Index, "All I can say at this point is that Cantor is at risk if it is not responding [to E&Y's requests for information] as promptly as practicable." Dkt. #58, at 29:16-17. As to RGL's requested schedule, the Court noted, "I don't think there's any specific process. The order speaks for itself. If, in fact, Cantor has

---

[2] "Ex." as used herein signifies exhibits to the Affidavit by Geoffrey Jarvis ("Jarvis Aff. __"), which is Exhibit 1 to this Motion.

not proceeded as promptly as practicable there are – you know, there are consequences from that." *Id.* at 32:19-22. "I'm not at that point yet," the Court concluded, "but at some point it's clear, so – particularly when the information is in—it's not the auditors themselves who are delaying it but it's the production of information by Cantor." *Id.* at 33:1-4.[3]    The Court made these cautionary statements at a time at which the production had only been delayed by eight months.  Of course, it has now been more than ***thirty-nine months*** since the Judgment.

- When no production was forthcoming, RGL wrote to Cantor Index on June 21, 2012.  RGL noted that over a year had passed since this Court issued its Order and Final Judgment, requiring Cantor Index to provide audited financial statements "as soon as practicable," but that Cantor Index had not provided a single statement.  Ex. D. RGL demanded the production of the financial statements, and an update regarding Z&B.  *Id.*

- Cantor Index responded on RGL on July 2, 2012, indicating that Z&B had not begun its work because Cantor Index had been waiting for RGL to either "either consent to the engagement of Z&B, request additional information, and/or state its continued objection."  Ex. E.  As to the 2008 and forward audits, Cantor Index provided a list of "open or partially open items" submitted to Cantor Index by E&Y to which Cantor Index had not yet completely responded, despite the fact that more than a year had passed since the Judgment issued.  *Id.*  Cantor Index's counsel indicated that he had been "advised that much of [the open items list] can be retrieved and provided to E&Y promptly."  *Id.*  He declined to respond to an estimated completion date for the 2008-2010 audits "because 2003-2007 must be completed first."  *Id.*  Cantor Index wrote further on July 5, 2012, with certain information regarding Z&B and its previous engagements.  Ex. F.

- On August 27, 2012, RGL informed Cantor Index that it should instruct Z&B to begin the audit process, despite the fact that not all of RGL's questions had been answered, and reserving the right to submit further questions in the future.  Ex. G.  RGL also requested an update on the status of the E&Y audits.  *Id.*

- Cantor Index wrote to counsel for RGL on August 31, 2012, stating that it found it "unacceptable" for RGL to continue to reserve its right to object to the "retention and use of Z&B to perform the Court[-]Ordered audits. . . . Until [RGL's waiver of any objection] is received, ***CIH will not begin*** the process of engaging Z&B."  Ex. H (emphasis added).

---

[3] RGL wishes to note for the record that it appears that the transcript of the January 23, 2012 status conference incorrectly attributes arguments made by Plaintiff's counsel, Arthur Ruegger, to Defendant's counsel, Francis Riley, and vice versa.  *See, e.g.*, Dkt. #58, at 30-31 (attributing to Mr. Ruegger arguments that Z&B is competent to perform auditing work for Cantor, and attributing to Mr. Riley questions concerning Z&B's qualifications).

- RGL responded on September 14, 2012, indicating that it declined to waive its rights to challenge the retention of Z&B, as Cantor Index had been unwilling to answer all of the questions put to it concerning Z&B's qualifications to perform the work. Ex. I. RGL also noted, separately, that it had not yet obtained an update from Cantor Index regarding the audits to be performed by E&Y. *Id.*

- Cantor Index wrote on September 27, 2012, indicating that "RGL must affirmatively object to Z&B's retention or withdraw its objection." Ex. J. Cantor also indicated that "several" items on E&Y's list of open requests had been closed, although E&Y and then since submitted approximately 10 additional requests, to which Cantor Index indicated it was responding. *Id.*

- Cantor Index wrote on October 17, 2012, representing that since its September 27, 2012 letter, "CIH has provided information and documents responsive to outstanding E&Y requests. Specifically, six additional items have been completed that were outlined in our July 2, 2012 [letter]." Ex. K.

- On October 26, 2012, RGL indicated that it had no objection at that time to the retention of Z&B perform the 2003-2007 audits, reserving its right to raise appropriate concerns in the future, and requested that Cantor Index keep RGL apprised of Z&B's progress. Ex. L.

- On June 6, 2013, RGL requested an update on the work of Z&B and E&Y concerning the audits, noting that it had not received an update or any communication relating to the audits since its last e-mail of October 26, 2012. Ex. M. Cantor Index replied on June 10, indicating that it would have a response within a week. Ex. N. When Cantor Index's counsel had not replied a month later, RGL asked again for an update. Ex. O. Cantor Index's counsel replied, with apologies, that he was on vacation and would have a call with his client within the week. *Id.*

- On July 16, 2013, Cantor Index's counsel indicated that he expected to hear back from his contact within a day or two "on particulars of status." He went on to say that "I do know that the work to be done on 2007 to 2010 audits has been completed, except for that which is dependent on a finalized audit for each of the previous years, and any update or recalculation that will be mandated by the final audits for the previous years." Ex. P.

- Cantor Index informed RGL on July 19, 2013, that Z&B was working with its affiliate to locate "all requested and required documentation," and that the audits for each year could not be completed until that process was completed. Ex. Q. RGL replied on August 2, 2013, noting that "this process has been going on for years" and requesting a timetable. Ex. R.

- On August 19, 2013, Cantor Index's counsel wrote to RGL. At this time—some ***twenty-seven months*** after the Court's Judgment—Cantor Index's counsel indicated that he his client liaisons "have spoken to Z&B about putting together

5

an open item summary and larger project benchmarks (with estimate of timing)," implying that such an open-item summary and list of benchmarks did not exist until this point. Cantor Index further represented that "Z&B continues to perform its field-work for each and every one of the subject years, relative to each of the four (4) operating subsidiary companies, and one sub-subsidiary, which includes obtaining original documentation (to the extent it exists) for all transactions." Ex. S.

- When RGL inquired again into the progress of the audits in August 2013, Cantor Index indicated that "Z&B believes it will be able to complete the 9 years of retroactive field work *in another 3 months* and *complete the audits within 1 to 2 months thereafter*." Ex. T (emphases added). Thus, Cantor Index represented that its auditor believed the entire project would be completed by **February 2014**. It also stated that E&Y was instructed to start a *new* "open item" list and to "keep an open dialog going forward with Z&B." *Id.*

- However, when no documents were forthcoming, RGL requested an explanation. Ex. U. On January 7, Cantor Index's counsel stated that he would check and "endeavor to provide as detailed a summary as possible concerning what has been accomplished, where things stand, and what the next steps are to be accomplished. *Id.* A week later, Cantor Index stated that the "status report is being reviewed and finalized." Ex. V.

- Almost a month later, on February 5, 2014, Cantor Index replied that its auditors *had not even completed the "retroactive field work"* referenced in its August 2013 e-mail. Ex. W. Cantor Index included an open-item list of requests that Z&B had purportedly sent, at some unknown point, to Cantor Index. It also provided an updated, "recent list of outstanding items." *Id.* The list demonstrates that, some two and a half years after the Court entered its judgment, Cantor Index had still not provided a substantial amount of the information or documents requested by Z&B. *Id.* In fact, Cantor Index had not provided the auditor with *any* of the requested adjusted journal entries, income tax information, accounts payable information, contact information for related-party receivables/loans, or a detailed schedule of costs of internally developed software. *See id.* (listing items as falling under an "Initial Request," and certain items remaining on the "As of January 2014" list).

- Also in the February 5, 2014, e-mail, Cantor Index declared that there was *no one* currently working at Cantor Index who had worked with its legacy ledger systems. Cantor Index also indicated that it faced difficulties because it could not locate relevant documents. *Id.* Further, it informed RGL that E&Y was "stand[ing] down" until Z&B completed its work. *Id.*

- On June 25, 2014, Cantor Index represented that some documents could not be located due to the passage of time and "most likely won't be located." Ex. X.

6

Recently, Cantor Index has decided to take a different tack, determining to reject the Court's clear mandate. Specifically, on July 15, 2014, Cantor Index informed RGL that it did not intend to provide RGL with *audit* opinions for financial statements covering the years 2003-2007. Instead, it indicated it would only provide "*review*" opinions for those years, Ex. Y, notwithstanding the language of the Court's mandates. Furthermore, Cantor Index unilaterally decided that "Z&B will be engaged to take over [from E&Y] the preparation of [the] consolidated audit opinions" for the years 2008 to the present. *Id.* In a further e-mail on July 25, 2014, Cantor Index indicated that Z&B would continue so that "no delay will occur" regarding the review opinions for 2003 and 2007, and that E&Y and Z&B "will also continue their efforts with respect to the 2008 forward audit opinions." Ex. Z. Cantor Index has not provided any updates since this time.

## DISCUSSION

## I.   THE COURT HAS THE JURISDICTION AND AUTHORITY TO HOLD CANTOR INDEX IN CONTEMPT OF COURT

The Court has jurisdiction to interpret and enforce its May 19, 2011 Judgment. *Travels Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (ruling that the bankruptcy court "plainly had jurisdiction" to enforce its own, twenty-year old orders); *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir. 1987) (noting that appeal did not divest bankruptcy court of jurisdiction to enforce its own orders); *In re Res. Capital LLC*, Case No. 12-12020 (MG), 2014 WL 1645350, at *7 (Bankr. S.D.N.Y. Apr. 23, 2014) ("All courts retain the jurisdiction to interpret and enforce their own orders.") (internal quotations omitted); *In re GGW Brands, LLC*, Adv. Proc. 2:13-ap-01552-SK, 2013 WL 6908889, at *14 (Bankr. C.D. Cal. Nov. 15, 2013) ("The law is clear, unless [contemnor] obtained a stay pending appeal, the Court has jurisdiction to grant the relief requested in the [Bankruptcy Rule of Procedure] 7070 Motion.").

Bankruptcy courts have inherent power to punish violations of their orders by contempt. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[I]t is firmly established that '[t]he power to punish for contempts is inherent in all courts,'" notwithstanding the existence of statutes and rules governing contempt) (quoting *Ex Parte Robinson*, 19 Wall. 505, 510 (1874)). This inherent power "'reach[es] conduct before the court and beyond the court's confines' and is a necessary function for purposes of managing and maintaining order in the efficient and expeditious administration of justice." *Cordius Trust v. Krummerfeld Assocs.*, 658 F. Supp. 2d 512, 515 (S.D.N.Y. 2009); *see also United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994) (referring to the inherent contempt authority as a power "necessary to the exercise of all others"). In addition, Congress has provided for civil contempt power by statute. 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *see In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990); *In re Yerushalmi*, Adv. Proc. 08-08-08037-478, 2011 WL 65739, at *3 (Bankr. E.D.N.Y. Jan. 10, 2011) (quoting 11 U.S.C. § 105).

The Federal Rules of Bankruptcy Procedure ["Bankruptcy Rule(s)"] regulate the use of this contempt power. Bankruptcy Rule 7070 applies Rule 70 of the Federal Rules of Civil Procedure ["Civil Rule(s)"] to adversary proceedings such as this one. Civil Rule 70 states in relevant part:

> **(a)** **Party's failure to Act; Ordering Another to Act**. If a judgment requires a party to convey land, to deliver a deed or other document, *or to perform any other specific act* and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party. . . .
> **(e)** **Holding in contempt**. The court may also hold the disobedient party in contempt.

8

Civil Rule 70. Bankruptcy Rules 9020[4] and 9014 further provide the procedure for pursuing

contempt in bankruptcy matters. *In re Bambi*, 492 B.R. 183, 191 (Bankr. S.D.N.Y. 2013)

("Courts may also use civil contempt pursuant to § 105(a) and Federal Rule of Bankruptcy

Procedure 9020 to 'compel a reluctant party to do what a court requires of him.'") (quoting

*Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986)).

## II.    CANTOR INDEX IS IN CONTEMPT OF THIS COURT'S ORDER AND JUDGMENT

Courts may hold parties in civil contempt when "(1) the order the party allegedly failed to

comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing,

and (3) the party has not diligently attempted in a reasonable manner to comply." *New York

State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989) ("*NY NOW*"). As

shown below, this standard is clearly satisfied in this case since, for more than three years,

Cantor Index has refused to comply with the Court's Judgment and, in July 2014, stated that it

will not comply with the Order as written.

### A.    THE COURT'S MAY 19, 2011 ORDER AND JUDGMENT ARE CLEAR AND UNAMBIGUOUS

This Court's May 19, 2011 Order and Judgment are more than sufficiently clear to

apprise Cantor Index of what was required of it. Specifically, the Judgment commanded that,

> [Cantor Index] shall, at its own cost and expense, have audited ***annual financial statements*** (on a consolidated basis) ***for the years 2003 through 2010*** prepared for it and provided to RGL as soon as practicable. Cantor Index shall, at its own cost and expense, ***for 2011 and each future year***, until the parties hereto agree otherwise in writing or pursuant to further order of this Court, have audited annual financial statements (on a consolidated basis) prepared for it and provided to RGL as soon as practicable following the end of each year.

Dkt. #33 (emphases added).

---

[4] Bankruptcy Rule 9020 states that "Rule 9014 governs a motion for an order of contempt made by the United States Trustee or a party in interest."

There is no question what is meant by audited annual financial statements—certainly none was raised in the proceedings before this Court, or in the intervening three years. Furthermore, there is no question for which years Cantor Index was obligated to generate such audited financial statements—2003 through 2010, and 2011 through the present time. Thus, the Order and the Judgment were clear and unambiguous.

The Order and Judgment were unambiguous even though they did not provide a date certain by which Cantor Index was required to comply with the Court's command. In the absence of a specific compliance deadline in a court order, parties must comply with the order within a reasonable time. *Muze Inc. v. Digital on Demand, Inc.*, 356 F.3d 492, 495 (2d Cir. 2004); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) (stating that although there was no "doomsday date" for compliance, "[l]ike any court order . . . [the] order plainly contemplated prompt compliance, particularly in light" of previous delays). As such, an "argument that the lack of a specific time line for compliance rendered the contempt order unenforceable is without merit." *United States v. Petal*, 464 F. App'x 342, 342 (5th Cir. 2012) (citing *Muze, Inc.*, 356 F.3d at 495); *see also In re GGW Brands, LLC*, 2013 WL 6908889, at *14 ("[A]lthough the Final Judgment did not specify a definitive time in which to comply, by the date of the hearing on the 7070 Motion, six weeks will have passed since the Court entered the Final Judgment. The Court finds that more than a 'reasonable' time has elapsed . . . .").

In a similar case, *Cobell v. Babbitt*, 37 F. Supp. 2d 6, 19 (D.D.C. 1999), the court issued an initial order in November 1996 requiring the government to produce certain documents "as soon as practicable." *Id.* However, the defendants failed to comply. Because the court assumed that the defendants were "proceeding to produce the information that they proposed to be produced as soon as practicable—as they were ordered and obligated to do," it did not set a hard

10

deadline. However, in May 1998, a year and a half after its initial order, the defendants had still not complied; thus, the court issued a new order with a date certain for production. When the defendants failed to comply with the deadline, the court ruled that they were in contempt for failing to comply with *both* orders, notwithstanding the fact that the initial order had no hard deadline. *Id.* at 16 ("The court finds by clear and convincing evidence that [defendants] are in civil contempt of this court's orders of November 27, 1996 and May 4, 1998."). Although the November 1996 order lacked a firm deadline, it still gave rise to a finding of contempt for noncompliance.

In this case, RGL drafted a proposed order that conformed to the Court's oral ruling issued during the hearing on the summary judgment motion. Specifically, the proposed order reflected the Court's decision on the record that it would choose to order compliance "as soon as practicable" because that is precisely the language used in Section 9.02 of the parties' Partnership Agreement.[5] Dkt. #31, at 31. **Cantor Index**—not RGL—drafted the Partnership Agreement. Presumably Cantor Index knew at the time it drafted the Agreement what "as soon as practicable" meant. Therefore, it cannot be heard now to complain that the language is ambiguous.[6] *See Cobell*, 37 F. Supp. 2d at 16 ("[D]efendants cannot be allowed to explain away their noncompliance by relying on their own erroneous drafting.").

Furthermore, Cantor Index never previously argued that the language of the Judgment was indefinite or ambiguous. Over the last three years—and until its most recent

---

[5] Section 9.02 provides in relevant part,

> [Cantor Index] shall provide [RGL] a monthly report of business activity (including revenues), a quarterly unaudited profit and loss statement and as soon as practicable following the end of each year audited annual financial statements . . . .

Dkt. #31, at 18:14-17.

[6] Indeed, during the January 23, 2012 status conference, the Court reiterated that the Order was clear. Dkt. #58, at 32:20 ("The order speaks for itself.").

communications in July of this year—Cantor Index has repeatedly represented that it would comply with the Judgment. Not once did it suggest it could not understand it, and it never moved the Court for clarification or modification. Indeed, in its appeal to the District Court, Cantor Index raised seven distinct grounds on which it urged reversal of this Court's Judgment— none raise even the slightest suggestion that Cantor Index believed the Order or Judgment to be unclear or indefinite. *See Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 979 (11th Cir. 1986) (noting that party never moved for clarification or modification of the order giving rise to the contempt, and therefore any objection they might raise to the order was stale); *S.E.C. v. Pension Fund of Am., L.C.*, No. 05-20863, 2006 WL 1104768, at *8 (S.D. Fla. Mar. 23, 2006) (quoting *Combs*, 785 F.2d at 979). Any such challenge to the clearness or specificity of the Judgment has therefore long since been waived.

### B. CANTOR INDEX'S NONCOMPLIANCE IS CLEAR

A party moving for contempt must prove noncompliance by "clear and convincing evidence." *In re MarketXT Holdings Corp.*, 336 B.R. 39, 51 (Bankr. S.D.N.Y. 2006). This prong of the contempt standard merely requires evidence "'adequate to demonstrate a 'reasonably certainty' that a violation has occurred.'" *Id.* (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).

There is simply no question that, more than three years after this Court issued its May 19, 2011 Order and Judgment, Cantor Index has failed to comply. It has not produced audited financial statements for a single year during the relevant time period. Even for the more recent statements, from 2008 forward, Cantor Index has not provided a single audit opinion; consequently, *five years* of "new" financial statements have piled up.

Now it has firmly stated that it will not comply with the Court's Judgment. Instead of providing *audit* opinions to accompany annual financial statements, it indicates it would only

12

provide *review* opinions for the five-year period between 2003-2007. This is not what the Partnership Agreement requires nor is it what this Court has ordered.

In contrast to audited financial statements, an accountant merely reviewing financial statements is not required to engage in verification or substantiation procedures; thus, its report is "substantially less in scope than an audit." Ex. AA, AMER. INSTITUTE OF CPAs, *What is the Difference Between a Compilation, a Review and an Audit?: Comparative Overview*. Furthermore, the auditor provides a "limited assurance," rather than a "positive assurance," and is not required to state that that the statements fairly represent the company's financial position.

The Court's Order and Judgment—and the parties' Partnership Agreement—specifically required *audited* financial statements. Thus, Cantor Index is refusing to comply with the Court's directives. On top of Cantor Index's sustained noncompliance over the past three years, this effort to avoid the clear mandates of the Court's Order is further evidence of Cantor Index's contempt.[7] *See Cobell*, 37 F. Supp. 2d at 25 (stating that an attorney "sealed defendants' fate" regarding the contempt motion when she directed her client to search for a limited number of documents, which necessarily meant that defendants would not produce all of the documents required by the court order).

### C.    CANTOR INDEX FAILED TO DILIGENTLY AND REASONABLY COMPLY WITH THE COURT'S ORDER AND JUDGMENT

It has been more than three years since this Court ordered Cantor Index to produce audited financial statements—statements which Cantor Index had a contractual duty to provide RGL on a yearly basis since RGL invested $8 million in the company over 12 years ago. From the time of the Court's May 19, 2011 Judgment, Cantor Index has not provided a single audited

---

[7] *Cf.* Cantor Index's Jan. 18, 2012 Ltr. to Court, Dkt. #57, at 3 (Cantor Index arguing that, "[i]f [a party] seeks to amend the Final Judgment, [it] must file the appropriate application with the court so that a full and complete record can be presented.").

financial statement to RGL.  Instead, all it has to offer are a litany of excuses and unmet commitments.

The cases are clear that parties seeking an order of contempt need not prove willful disobedience or bad faith.  *See Manhattan Indus. Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1985) ("That [contemnor's] conduct may not have been willful does not preclude [an award of sanctions], since 'sanctions for civil contempt can be imposed without a finding of willfulness.'") (quoting *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 39 (2d Cir. 1989)); *see also Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979) ("The fact that the prohibited act was done inadvertently or in good faith . . . does not preclude a citation for civil contempt, for the sanction is remedial in nature.").  There is no intent requirement in a civil contempt proceeding.  *See In re MarketXT Holdings, Corp.*, 336 B.R. at 54 (stating that movant need not prove that the contemnor's disobedience was intentional).  Once a movant has demonstrated a violation of a specific and definite order, "the charged party has the burden of proving his or her inability to comply."  *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 536 (Bankr. S.D.N.Y. 2007).

Over the more than three years since Cantor Index was ordered to turn over audited financial statements, it offered to RGL only a seemingly endless catalogue of ever-changing excuses.  For example, on August 27, 2013, it indicated that its auditor believed it would have the audits complete by the end of January 2014.  Ex. T.  Not only did it not make that deadline, some eight months after that deadline Cantor Index has still not produced a single financial statement.  Whatever Cantor Index's intent, its conduct is far from diligent.  Mimicking the conduct of the *Cobell* defendants, which earned them civil contempt sanctions, Cantor Index "continue[s] to represent that the check is in the mail with regard to document production."

*Cobell*, 37 F. Supp. 2d at 14-15 (stating that where twenty-six months had passed from a court's order to produce certain documents, "and the defendants had not even come close to bringing themselves into compliance, the court's last available option [is] to proceed by contempt").  And Cantor Index's most recent decision to reject the specific requirements of the Order and Judgment of its own accord demonstrates very clearly its lack of diligence and its failure to reasonably comply with the mandates of this Court.   *See Cobell*, 37 F. Supp. 2d at 25 (finding that the defendants' fate was "sealed" when the attorney ordered its client to search for fewer than all of the documents required by the court).

## III.   COMPENSATORY AND COERCIVE SANCTIONS ARE NECESSARY AND APPROPRIATE

Civil contempt sanctions have dual functions:  they may serve to coerce compliance with an underlying order *and* to compensate an opposing party for the costs incurred by the noncompliance.  *NY NOW*, 886 F.2d at 1352-53 ("A sanction may, of course, be both coercive and compensatory.") (citing *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)); *see also S.E.C. v. Northshore Asset Mgmt., LLC*, No. 05-cv-2192, 2006 WL 1642915, at *3 (S.D.N.Y. June 14, 2006) (noting that the purpose of civil contempt remedies is to "restor[e] the status quo, compensate[e] . . . for damages, and compel[] future compliance").

### A.   COMPENSATORY SANCTIONS SERVE CONTEMPT'S REMEDIAL PURPOSE

"Compensatory sanctions should reimburse the injured party for its actual damages." *NY NOW*, 886 F.2d at 1353.  In preparing this Motion, and undoubtedly in replying to an expected response from Cantor Index, RGL's counsel will have expended significant and valuable time and resources.  Therefore, Plaintiff requests compensatory sanctions in an amount sufficient to

pay Plaintiff's counsel fees and expenses occasioned by Cantor Index's contempt.  This amount will be established by affidavit upon the direction of the Court.[8]

### B.    COERCIVE SANCTIONS ARE NECESSARY TO ENSURE CANTOR INDEX'S COMPLIANCE

Contempt sanctions may be coercive as well as compensatory.  *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 289 (S.D.N.Y. 2000) (stating that civil contempt sanctions may be imposed "'for either *or both* of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained'") (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)) (emphasis added).  Sanctions are coercive, rather than punitive, when the "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'"  *United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

When determining the proper amount of coercive sanctions, courts look to the "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden."  *NY NOW*, 886 F.2d at 1353; *see also Musalli Factory for Gold & Jewelry Co. v. N.Y. Financial LLC*, No. 06-CV-92, 2010 WL 2382415, at *3 (S.D.N.Y. June 14, 2010).  Coercive sanctions must be "reasonable in relation to the facts."  *NY NOW*, 886 F.2d at 1353.  Courts have "broad discretion to design a remedy that will bring about compliance."  *Perfect Fit Indus., Inc. v. Acme Quilting, Inc.*, 673 F.2d 53, 57 (2d Cir. 1982).

---

[8] RGL respectfully reserves the right to return to Court and seek further compensatory sanctions should Cantor Index continue to defy the Court's Judgment.

RGL respectfully requests that the Court direct Cantor Index to pay the Court the sum of $500 for each day it fails to provide the requested documents. Should Cantor Index fail to comply after sixty days, RGL respectfully requests that this sum escalate to $1,000 per day every day thereafter. *See CE Inter. Resources Holdings LLC v. S.A. Minerals Ltd. P'ship*, No. 12-cv-8087 (CM), 2013 WL 324061, at *3 (S.D.N.Y. Jan. 24, 2013) (providing for a daily fine of "$5,000 per day, escalating to $20,000 after 20 days"). These sums are supported by the three factors set forth in *NY NOW*. 886 F.2d at 1353.

### 1. The Harm Of Cantor Index's Continued Disobedience Of The Court's Order Is Substantial – And Only Increases With The Passage Of Time

Cantor Index's continued failure to provide the audited financial statements has prevented RGL from properly valuing its interest in Cantor Index. Dkt. #31, at 29 ("[T]he purpose of requiring compliance with Section 9.02 and the provision of audited financial statements is to calculate potential money damages."). As a result, since the initiation of this matter, RGL has waited more than four years to obtain value for its investment—and, if Cantor Index is not made promptly to comply—it may be waiting quite a bit longer.[9] Without the resources such compensation could bring, RGL cannot resolve issues surrounding its interest in Cantor Index or related uncertainties regarding distributions to creditors. And with each passing day, the risk that information will be lost or that memories will fade grows ever more certain. Indeed, Cantor Index has the audacity to claim as an excuse the fact that the documents and persons with knowledge it believes are necessary to compile the statements are long since lost.

---

[9] One can predict that Cantor Index will argue that RGL can obtain discovery from CIH as part of its other proceeding, *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P., et al.*, C.A. No. 1:13-cv-01654-RA-HBP (S.D.N.Y.). However, as Cantor Index has never bothered to generate the audited financial statements it was contractually obligated to provide to RGL in the past—and has dragged its feet since this Court's May 19, 2011 Judgment—there apparently are no extant audited financial statements RGL could seek in that action. And *unaudited* financial information is substantively different than what this Court has said RGL is entitled to—sufficiently so that an auditor providing an unaudited opinion would be unwilling to give a "high level of assurance about whether the financial statements as a whole are free from material misstatement thereby enabling the auditor to express an opinion on whether the financial statements are presented fairly, in all material respects." Ex. AA.

*See, e.g.*, Ex. Y.  It was *Cantor Index's* failure to comply with its contractual promise to provide these statements on a timely, annual basis that gave rise to this action.  And its failure to promptly comply with the Court's mandates can only have compounded the problem.  More than three years ago, the Court recognized that RGL would be prejudiced if the Judgment was stayed pending appeal.  Dkt. #52, at 27. ("Frankly, again, I believe there is prejudice in that the audited consolidated financial statements haven't been provided.").  The harm resulting from Cantor Index's noncompliance has only multiplied in the interceding three years.

**2.      RGL's Proposed Sanction Can Be Expected To Be Effective In Forcing Compliance, And Is Not An Overwhelming Burden For Cantor Index**

Furthermore, a sanction of $500 is presumably not an overwhelming burden for Cantor Index.  Nonetheless, it is sufficiently substantial that it should serve as a catalyst for Cantor Index to act immediately to ensure compliance.  Should it not be effective at meeting that goal, and if Cantor Index has failed after sixty days to fully comply as required by the Court's Judgment, a fine of $1,000 per day should motivate Cantor Index at long last to provide the financial statements to which RGL is entitled.  *See In re Gregg*, 428 B.R. 345, 348 (Bankr. D.S.C. 2009) (finding a sanction of $500 a day necessary to coerce compliance with the court's order); *cf. Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (affirming a $5,000 per day coercive sanction because the trial court devised a sanction was "substantial enough to make it more economical for [the company] to comply than not to comply").

## CONCLUSION

Because Cantor Index has failed to comply with the May 19, 2011 Order and Judgment, RGL respectfully requests that the Court enter an order finding Cantor Index in contempt of court, directing Cantor Index to pay RGL's costs and attorneys' fees associated with this contempt proceeding, and further directing Cantor Index to pay sanctions to the Court in the amount of $500 per day, escalating after sixty days to $1,000 per day, until such time as Cantor Index fully complies with the Order and Judgment.

Dated:  September 19, 2014

Respectfully submitted,

**GRANT & EISENHOFER P.A.**

BY:   /s/ Geoffrey Jarvis
Jay W. Eisenhofer
(jeisenhofer@gelaw.com)
Geoffrey C. Jarvis
(gjarvis@gelaw.com)
485 Lexington Avenue
New York, New York 10017
Tel:   (646) 722-8500
Fax:   (646) 722-8501

*Attorneys for Refco Inc. and*
*Refco Group Ltd., LLC*